IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ROBERT M. JOHNSON, *Appellant*, v. JOHN THOMAS DOWLING *Appellee.* | CASE NO. 6:12-cv-00065 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Appellant Robert M. Johnson ("Johnson") has appealed a decision of the U.S. Bankruptcy Court for the Western District of Virginia in an adversary proceeding in which Johnson sought to have a debt owed to him by Appellee John Thomas Dowling ("Dowling") declared non-dischargeable. For the following reasons, I will reverse the opinion of the Bankruptcy Court and enter judgment in favor of Johnson.

**I.**

Johnson is a semi-retired homebuilder who spent thirty years in that business. He met Dowling in 2004 and they became friends. In early 2008, Dowling approached Johnson and asked him to make a loan to Dowling Enterprises, LLC ("Dowling Enterprises") in the amount of $150,000. At the time, Dowling and his wife owned 66.239% of Dowling Enterprises, which was a real estate development company that owned land in Chesterfield County on which a carwash was located and operated by Chesterfield Car Wash Company, LLC ("Chesterfield Car Wash"). Dowling was member of Chesterfield Car Wash, which leased the land from Dowling Enterprises. In January 2008, Temecula Valley Bank ("TVB") held a security interest in the land securing a debt owed by Dowling Enterprises in the approximate amount of $2,000,000.

When Dowling requested the loan from Johnson, he represented that the loan proceeds would be used to make a down payment on a certain parcel of real estate that Dowling Enterprises wished to purchase for the construction of a second car wash. He also represented that Dowling Enterprises would be able to repay the loan within 60 days because a lender, Alpha Omega Financial Corp. ("Alpha Omega"), had agreed to refinance the note held by TVB in a transaction that would result in a cash payment to Dowling Enterprises. Relying on Dowling's representations, Johnson made the requested $150,000 loan on February 1, 2008. The resulting debt was evidenced by a "Deed of Trust Note" and was secured by a lien on the original car wash land. Dowling signed the Deed of Trust Note on behalf of Dowling Enterprises and also as guarantor. The terms of the note provided that Dowling Enterprises was to repay the loan in full, plus interest of $15,000, on April 2, 2008. If the debt was unpaid as of that date, Dowling Enterprises was to make the interest payment of $15,000, and interest would accrue at an annual rate of 18% and be payable monthly, with principal and interest payable on demand.

On the same day that Johnson made the loan, Dowling Enterprises paid $21,500 to H&B Associates, Inc. ("H&B") to pay down a pre-existing debt secured by a second-priority lien on the original car wash land. Shortly thereafter, Dowling purchased a $50,000 equity interest in Dowling Enterprises held by Bruce Griggs. Dowling also used $15,000 to pay a pre-existing debt Dowling Enterprises owed to American Express. Finally, the balance of the loan proceeds—approximately $64,000—was transferred to Chesterfield Car Wash for "operational purposes." The Alpha Omega loan never closed, and Dowling Enterprises never received any money from Alpha Omega. Nor did Dowling Enterprises purchase the real estate parcel that Dowling had represented the company intended to buy in order to operate a new car wash.

- 2 -

Case 6:12-cv-00065-NKM   Document 12   Filed 02/25/13   Page 2 of 13   Pageid#: 377

Dowling stated that the purchase did not occur because a bidding war drove up the price of the parcel and because he learned of problems with road access to the site.

Ultimately, Dowling was unable to timely pay the debt arising under the Deed of Trust Note. As of April 2, 2008, Johnson had received no payments towards the loan. On May 1, 2008, Dowling made a $15,000 payment, and he made additional payments in May, July, August, and December 2008, and a final payment in January 2009. The total amount of these payments was $28,950. Although Dowling Enterprises defaulted on the Deed of Trust Note, Johnson did not foreclose on the original car wash land because he could not afford to pay the TVB debt. Dowling ceased operating Dowling Enterprises in August 2010, and he transferred his interest in the entity to his wife in February 2011. Dowling Enterprises entered Chapter 11 bankruptcy, and the original car wash land was sold for an amount that was insufficient to pay off the TVB first deed of trust. Consequently, Johnson did not receive any money from the sale of that land.

On November 13, 2009, Johnson obtained a state court judgment in the Virginia Beach Circuit Court against Dowling and Dowling Enterprises in the amount of $175,987.50 plus costs and interest at the rate of 18% per annum. Dowling filed a bankruptcy petition initiating a Chapter 7 case on January 6, 2012. Johnson then filed an adversary complaint seeking to have the debt arising under the Deed of Trust Note declared non-dischargeable, and the U.S. Bankruptcy Court entered judgment in favor of Dowling. Johnson appealed.

## II.

In reviewing a decision of a bankruptcy court, a district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *Terry v. Meredith (In re Meredith)*, 527 F.3d 372, 375 (4th Cir. 2008) (citing *Kielisch v. Educ. Credit Mgmt. Corp. (In re*

*Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2001)); *see also* Fed. R. Bankr. 8013. A finding of fact is clearly erroneous if, after review of the record, the reviewing court is left with a firm and definite conviction that an error has been committed. *Klein v. PepsiCo., Inc.*, 845 F.2d 76, 79 (4th Cir. 1988).

### III.

### A.

Johnson brought his complaint under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6), which provide for exceptions to the general rule permitting the discharge of debts in bankruptcy. He claims that the bankruptcy court erred as a matter of law in its interpretation of § 523(a)(2)(A).[1] Section 523(a)(2)(A) provides that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The bankruptcy court considered the exception first, concluded that it did not apply, and proceeded to analyze the issue of fraud. *See Johnson v. Dowling (In re John Thomas Dowling)*, No. 12-60031, at 9–10 (Bankr. W.D. Va. 2012).

Section 523(a)(2)(A) does not give rise to an independent cause of action, but rather "only provides that a claim for fraud founded on other applicable law may not be discharged in bankruptcy." *Id.* at 10. Thus, a plaintiff must prove the common law elements of fraud. *Id.* The bankruptcy court stated that:

> To prevail on a claim for actual fraud under section 523(a)(2)(A), a creditor must prove each of five elements: (1) that the debtor made a representation; (2) that at the time the representation was made, the debtor knew it was false; (3) that the debtor made the false representation with the intention of defrauding the creditor;

---

[1] Johnson does not challenge the bankruptcy court's decision regarding § 523(a)(4) or § 523(a)(6).

- 4 -

(4) that the creditor justifiably relied upon the representation; and (5) that the creditor was damaged as the proximate result of the false representation.

*Id.* at 11 (citing *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999); *MBNA America v. Simos (In re Simos)*, 209 B.R. 188, 191 (Bankr. M.D.N.C. 1997)).  The court found that it could resolve this case on the third element.  *In re Dowling*, at 11.

The bankruptcy court concluded that "[i]n determining whether a debtor possessed fraudulent intent, the question is whether the debtor subjectively intended to defraud the creditor."  *In re Dowling*, at 12 (citing *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090 (9th Cir. 1996)).  "A debtor subjectively intends to defraud a creditor when he in bad faith incurs a debt with the knowledge that the debt is unlikely to be repaid.  *Id.* (citing *In re Rembert*, 141 F.3d at 281).  Furthermore, "[e]xistence of fraud under Section 523(a)(2)(A) may be inferred if the totality of the circumstances presents a picture of deceptive conduct by a debtor which indicates he intended to deceive or cheat a creditor."  *Id.* at 13 (citing *In re Schmidt*, 70 B.R. 634, 640 (Bankr. N.D. Ind. 1986)).  The court ultimately stated that in order to prove subjective intention to defraud, Johnson had to prove that Dowling "intended, at the time the parties executed the Deed of Trust note, to default on his payment obligation under that note."  *Id.* at 12–13.  After analyzing the facts surrounding Dowling's representations concerning the commitment letter from Alpha Omega and the planned purchase of land to serve as the location for a new car wash, the court concluded that, although the question was a close one, Dowling did not intend to deceive Johnson when he made these two representations.  *Id.* at 17.

As an initial matter, although the bankruptcy court identified five elements required to prove fraud, the Fourth Circuit's decision in *In re Biondo* identifies only four: "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the

- 5 -

plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." 180 F.3d at 134.[2] Thus, the inquiry in this case should focus on whether the debtor made "a fraudulent misrepresentation," which is "a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it." *Id.* (quoting Restatement (Second) of Torts § 525 (1976)). Regardless of whether you cast the inquiry in terms of five elements or four, proof of the intent to deceive appears to be required. *See Rimal v. Wibisono (In re Wibisono)*, 412 B.R. 747, 755 n.2 (D. Md. 2009) (stating that "the intent to deceive is akin to the intent to induce to act"). Johnson himself acknowledges that a plaintiff seeking to have debts declared non-dischargeable "must also prove intent to deceive;" he simply argues that the bankruptcy court framed the issue too narrowly.

The bankruptcy court held that "a plaintiff must prove that the debtor intended to breach the contract at the time the contract is made." *In re Dowling*, at 12. In imposing that requirement, the court relied on *In re Rembert* and *In re Eashai*. But both of those cases addressed credit card debts, which require a different type of analysis; as the court in *In re Eashai*, 87 F.3d at 1087, recognized, "[m]any courts have acknowledged that credit card debts are different from other types of debts which are discharged for fraud." Because the act of using a credit card "represents either an actual or implied intent to repay the debt incurred," *In re Rembert*, 141 F.3d at 281, bankruptcy courts dealing with credit card debt focus "solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of

---

[2] The bankruptcy court's identification of five elements is consistent with at least one unpublished Fourth Circuit decision that post-dated *In re Biondo*, *see Lind Waldock & Co. v. Morehead*, 1 F. App'x 104, 107 (4th Cir. 2001) (listing five elements required to prove fraud), as well as a district court decision in Maryland. *See Colombo Bank, F.S.B. v. Sharp*, 477 B.R. 613, 619 (D. Md. 2008) (same). In general, however, district courts in the Fourth Circuit appear to examine fraud claims using the four-element framework. *See, e.g.*, *Miller v. Cigna Ins. Co.*, 311 B.R. 57, 61 (D. Md. 2004).

petitioning for bankruptcy and avoiding the debt." *Id.* (quoting *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285–86 (9th Cir. 1996)).

By contrast, when dealing with fraudulent misrepresentations in the context of other types of loans, courts have focused not solely on whether the debtor intended to default and avoid repaying the debt by entering bankruptcy, but rather on whether the particular misrepresentations were fraudulent, i.e., false with the intention to mislead. For example, in *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 963 (6th Cir. 1993), the debtor represented to the plaintiff creditor that he would use the plaintiff's investment in a general partnership to purchase a shopping center. The debtor did not do so, and instead used the money for unrelated purposes. *Id.* The bankruptcy court held that his representation constituted fraud and therefore the liability was non-dischargeable under § 523(a)(2)(A), and the Sixth Circuit affirmed. *Id.*

Similarly, the debtor in *Merchants National Bank & Trust Company of Indianapolis v. Pappas (In re Pappas)*, 661 F.2d 82, 84–85 (7th Cir. 1981), represented to a bank from which he borrowed money that he would use the loan proceeds to purchase real estate, but he did not and instead used the funds for other purposes. The court held that "under the facts of this case, that where the bankrupt is entrusted with money to be used for a specific purpose, and he has no apparent intention of using the money for that purpose, then a misrepresentation clearly exists upon which a debt can be properly held non-dischargeable." *Id.* at 86. In other words, even if the debtor had no intention to default and fully intended to repay a loan, he could still commit fraud by misrepresenting how he intended to use the loan proceeds. The Seventh Circuit held that the bankruptcy court's conclusion that the debtor made intentionally false representations with the intent to deceive was not clearly erroneous. *Id.*

- 7 -

Finally, in *Fensick v. Segala (In re Segala)*, 133 B.R. 261, 264 (Bankr. D. Mass. 1991), the debtor requested funds from the plaintiffs that he said he would use to work on a construction job. The court stated that "[i]f funds are deemed to have been entrusted to the debtor for a specific purpose, the debtor is regarded as impliedly representing his intention to use the funds accordingly. Failure to use the funds would be evidence of a misrepresentation of that intent under § 523(a)(2)(A)." *Id.* Under the standard that the bankruptcy court used in this case—that proof of intent to deceive required a showing that the debtor intended to breach the contract at the time he signed it—none of the misrepresentations in these cases would have been sufficient to constitute fraud, as long as the debtors subjectively intended to pay the money back. These cases make clear that a borrower may make a false statement with the intent to deceive in order to obtain a loan without intending to default on that loan.

Consequently, I find that the bankruptcy court erred in its interpretation of 11 U.S.C. § 523(a)(2)(A). Specifically, I conclude that § 523(a)(2)(A) does not require a creditor to prove that the debtor intended to default at the time he incurs the debt. While such proof would of course be sufficient to make out a case of fraud, a showing of intention to default is not required to prove fraud. Instead, Johnson need only show that Dowling's representations regarding how he intended to use the loan proceeds and his source of repayment were fraudulent.

**B.**

Johnson also argues that the bankruptcy court made two findings of fact that constituted clear error: (i) the finding that "[m]oney . . . is fungible and therefore it cannot necessarily be concluded that the funds used to pay H&B and expenses of the business were taken from the Loan Funds;" and (ii) the finding that the parties agreed to a repayment schedule after Dowling defaulted. After reviewing the record, I conclude that both of these findings are clearly

- 8 -

Case 6:12-cv-00065-NKM Document 12 Filed 02/25/13 Page 8 of 13 Pageid#: 383

erroneous. Documents entered into evidence at trial and testimony by witnesses, including Dowling himself, conclusively demonstrate that the money to pay H&B and other business expenses did in fact come from the loan funds, and that the parties did not agree to a repayment schedule.

The bankruptcy court is of course correct that money is fungible, and in general it can be difficult to determine whether a specific source of money was used to pay a specific debt or make a specific purchase. In this case, however, Dowling admitted at trial that he used the money he borrowed from Johnson to pay down a separate debt owed to H&B and to pay other expenses related to his business. Plaintiff's counsel specifically asked Dowling whether he used the money Johnson loaned him to pay down the H&B debt, and Dowling testified that he did.[3] Furthermore, in his response brief, Dowling acknowledged that he "plainly conceded that he used the proceeds from Johnson's loan to pay down debt and to attempt to keep his business operating." Thus, I find that the bankruptcy court's factual finding to the contrary was clearly erroneous.

The bankruptcy court also found that after Dowling defaulted on the loan, "the parties agreed to a repayment schedule under which the Debtor, or Dowling Enterprises, would pay the

---

[3] The trial transcript shows at least two instances where Dowling admitted using money loaned to him by Johnson to pay the H&B debt:

Q  Now, you ended up making a partial pay off to H&B; is that correct?
A  Yes, sir.
Q  But you used Mr. Johnson's money to do it, didn't you?
A  Yes, I did.

Trial Tr. 42:23–43:1.

Q  And this promissory note was to take into account the balance owed to H&B as of February 2008 after you had made a significant payment, correct?
A  Yes, sir.
Q  A payment using the money you had borrowed from Mr. Johnson
A  Yes, sir.

Trial Tr. 44:14–20.

- 9 -

Plaintiff $15,000.00 on April 2, 2008, and $2,250.00 per month thereafter." *In re Dowling*, at 16–17. To support this finding, the court cited Plaintiff's Exhibit 2, which is a table listing interest periods, due dates, amount due, date paid, amount paid, late fees, and balance due. Nothing on the face of the document indicates that it is a "repayment schedule" agreed to after the default. In fact, at trial, Johnson testified that the table was simply a spreadsheet he used to track payments he received from Dowling. Trial Tr. 15:9–17. In addition, at oral argument on this appeal, Dowling's counsel conceded that there was no post-default agreement regarding a repayment schedule. Instead, the due dates and amounts payable listed in Exhibit 2 were simply those agreed upon during the initial negotiation of the loan. Accordingly, I conclude that the bankruptcy court's finding that the parties agreed to a "repayment schedule" was clearly erroneous.

## C.

Since the bankruptcy court held that it could resolve this case on only one element of fraud, the question remains whether Johnson proved all of the elements of fraud. Applying the correct legal standard to the facts on the record, I conclude that Johnson has proven that Dowling obtained the loan through fraudulent misrepresentations, and therefore Dowling's debt owed to Johnson is not dischargeable under 11 U.S.C. § 523(a)(2)(A). As discussed above, to prove fraud in order to have debts declared non-dischargeable in bankruptcy, a plaintiff must prove four elements: "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *In re Biondo*, 180 F.3d at 134. Based on the documents and testimony presented at trial, I find that Johnson has proven all four elements.

- 10 -

Case 6:12-cv-00065-NKM   Document 12   Filed 02/25/13   Page 10 of 13   Pageid#: 385

With respect to the first element, I find that Dowling made a fraudulent misrepresentation when he told Johnson that he intended to use the loan proceeds to make a down payment on a parcel of land. As discussed above, courts in multiple jurisdictions have found that misrepresentations as to the intended use of funds can constitute fraud under § 523(a)(2)(A). *See In re McLaren*, 3 F.3d 958; *In re Pappas*, 661 F.2d 82; *In re Segala*, 133 B.R. 261. The evidence strongly suggests that Dowling's representation about the intended use of the loan proceeds was fraudulent. Most significantly, Dowling never used any of the loan funds to make a down payment on real estate. While he claims that he failed to do so because of problems with the parcel he intended to purchase, the timeline of his actions belies his explanation and suggests that he knew at the time he made the representation that he would use the funds for other purposes. The very day Dowling signed the Note, he used $21,500 of the loan proceeds to pay down a different debt. Shortly thereafter, he used $15,000 to pay a debt owed to American Express and another $50,000 to acquire for himself the ownership interest of another member of Dowling Enterprises. He used the rest of the funds for the Chesterfield Carwash's general operational purposes. Dowling had mentioned none of these potential purposes when he negotiated the loan with Johnson.

The evidence also shows that Dowling made a fraudulent misrepresentation when he told Johnson that he was about to close on a larger loan that would be sufficient to repay the loan from Johnson. Perhaps the strongest evidence of a fraudulent misrepresentation is that Dowling never did close on the larger loan that he claims he expected to receive from Alpha Omega. In addition, although Dowling claimed that he had received a commitment letter from Alpha Omega, he was unable to produce any such letter. The only documentation of the alleged loan is a closing statement dated January 26, 2008, that clearly indicates any loan was "still under

negotiation." Moreover, according to the closing statement, the amount of funds that would go to Dowling as borrower, was only $107,464.52, well short of the amount that would be required to repay the loan from Johnson. Dowling lacked a reasonable basis to make the representation that he did, and he misrepresented his actual position to Johnson. Therefore, I find that this representation was also fraudulent.

The second element of fraud is whether the misrepresentation induced another to act or refrain from acting. The undisputed evidence shows that Johnson relied on both representations, *see* Trial Tr. 12:14–18, 13:3–7, and he testified that but for these two misrepresentations, he would not have made the loan. *See* Trial Tr. 12:19–21, 13:8–10. Johnson explained that without assurance that the loan money would be used to make a down payment on real estate, which he viewed as a "secure investment," he would have worried that Dowling was suffering from "cash flow problems." Trial Tr. 12:23–13:1. Johnson also explained why Dowling's representation about the Alpha Omega loan was important to him in deciding whether to make the loan, testifying that parting with that amount of money imposed a hardship on him and that he was just trying to help out a friend. Trial Tr. 13:12–18.

These explanations help prove the fourth element of fraud, justifiable reliance. Johnson, who had known Dowling for years and called him a friend, was presented with a plan to expand the carwash business that he knew Dowling operated. Dowling gave him specific assurances of how he would use the money and how he would pay it back. I find that Johnson's reliance on Dowling's representations was reasonable and justifiable. Finally, the third element of fraud is easily proven. Had Dowling not made the fraudulent misrepresentations, Johnson would not have loaned him the money. Johnson has been repaid only a fraction of what he is owed, and therefore has clearly suffered financial harm as a result of Dowling's misrepresentations.

## IV. CONCLUSION

For the foregoing reasons, I will reverse the decision of the bankruptcy court and enter judgment in favor of Johnson. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this <u>  25th  </u> day of February, 2013.

<u>                                     </u>
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE